## IN THE FEDERAL DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

|  |  |
|---|---|
| HANY SHALABI, | |
| Plaintiff, | |
| v. | Case No.: 21-cv-5623 |
| CITY OF CHICAGO, a municipal corporation, | Hon. Judge Manish S. Shah |
| Defendant. | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS COUNTS I AND IV OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, Hany Shalabi, by and through his undersigned counsel, asks this Court to deny defendant's motion to dismiss Counts I and IV of the Complaint for failure to state a claim. In opposition to this motion, Plaintiff states as follows:

## INTRODUCTION

Hany Shalabi ("Shalabi") applied to work as a police officer with the Chicago Police Department ("CPD") in April 2016. Dkt. 7, ¶ 6. Shalabi is an Arab of Palestinian origin and his religion is Islam. *Id.* at ¶ 5. Shalabi successfully completed the initial steps of his CPD application after which it went to Investigative Unit for further review. *Id.* at ¶ 10. As of the time of filing his lawsuit, Shalabi's application remained in the Investigative Unit. *Id.* at ¶ 14. Shalabi disclosed in his application that his wife, Nilofer Nanlawala ("Nanlawala"), was a CPD police officer. *Id.* at ¶ 15. The year prior to his application, Nanlawala sought reasonable accommodations for her pregnancy; it wasn't until after legal action that her accommodation was

provided. Dkt. 14-1, Defense Exhibit 1. After returning from maternity leave, Nanlawala requested a private place to pump breast milk; after initial denials from her immediate supervisor, he eventually provided her with a washroom to pump. Dkt. 14-1, Defense Exhibit 1. From her initial pregnancy accommodation request forward, Shalabi's wife encountered ongoing harassment and faced other forms of discrimination, including being called an anti-Semite when it was discovered that the couple attended a pro-Palestinian rally and Shalabi's wife was wearing the Muslim headscarf (*hijab*). *Id*. at ¶ 18.

It was during this time that Shalabi applied to work at CPD and in which his application was held in limbo in the Investigative Unit undergoing review. *Id*. at ¶ 10-11. In his attempts to learn the status of his application, Shalabi was given different reasons why a decision had not been made as to his application; these reasons ranged from the application being lost to Shalabi being told not to pursue it because if he were rejected, it would hurt his future hiring prospects. *Id*. at ¶ 11-13.

Shalabi timely filed a charge with the EEOC alleging discrimination based on religious and national origin discrimination and retaliation. *Id*. at ¶ 1. After receiving his right to sue letter from the EEOC, Shalabi timely filed his complaint with this court including his First Amended Complaint ("FAC"). Dkt. 1; Dkt. 7. Shalabi's four-count FAC includes: (1) § 1983 race and national origin discrimination under the equal protection clause and Title VII, respectively; (2) Title VII national origin discrimination; (3) Title VII religious discrimination; and (4) Title VII retaliation. Defendant's Partial Motion To Dismiss Counts I And IV Of Plaintiff's First Amended Complaint followed.

**STANDARD OF REVIEW**

Defendants' partial motion to dismiss is brought pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Dkt. 14. A motion to dismiss tests the sufficiency of a complaint. *Collins v. Bd. of Educ.*, 792 F. Supp. 2d 992, 998 (N.D. Ill. 2011) (citing *Gibson v. City of Chicago*, 910 F. 2d 1510, 1520 (7th Cir. 1990). In determining a complaint's sufficiency, the court construes the complaint in the light most favorable to the nonmoving party, accepts well-pleaded facts as true, and draws all inferences in plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*,623 F.3d 1143, 1146 (7th Cir. 2010) (quotation marks omitted). To survive a motion to dismiss, the plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The complaint must contain "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief. *Id.* at 557. A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *NewSpin Sports, LLC v. Arrow Electronics, Inc.*, 910 F.3d 293, 299 (7th Cir. 2018). In assessing plausibility, the Court should read the complaint as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823 (7th Cir. 2011).

## **ARGUMENT**

### I. **Plaintiff's § 1983 Claim Satisfies *Monell*.**

The City argues that Shalabi's § 1983 claim asserting the City's violation of his Constitutional and statutory rights must be dismissed because it does not satisfy the requirements for *Monell* liability. Specifically, the City argues Shalabi fails to allege facts that would support a claim that the City had either (1) an express policy or (2) a widespread custom or practice that

caused the deprivation, and that he fails to allege (3) a person with final policy making authority acted to cause the deprivation. Dkt. 14, pp. 3-4. Applying the legal standard of review for motions to dismiss, the City's arguments fail because Plaintiff's FAC raises plausible inferences that persons with final policy making authority caused the deprivation.

### a. Final policymaking authority under Monell

A person possesses final policymaking authority for employment purposes if they have the authority to set policy for hiring and firing. *Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 676 (7th Cir. 2009). "A person's status as final policymaker under § 1983 is a question of statute or local law. Final policymaking authority may be granted directly by statute or delegated or ratified by an official having final policymaking authority." *Kujawski v. Board of Comm. of Bartholomew Cty*, 183 F.3d 734, 737 (7th Cir. 1999). "[T]he delegation by the ultimate decision maker to someone lower in the food chain or the ratification of that someone's decision by the ultimate decisionmaker can equate in legal terms to the required action by the decisionmaker []." *Waters v. City of Chicago*, 416 F. Supp. 2d 628, 631 (N.D. Ill. 2006). Defendant's Police Department's General Order G01-02 establishes the command structure for the police department. Hiring for the police department is delegated by the Superintendent to the Chief of the Bureau of Organizational Development, who delegates their authority through various departments, including the Human Resources division. The Human Resources division acted with respect to both Plaintiff's application for employment and his wife's requests for accommodation and leave.[1]

---

[1] *See* Chicago Police Department General Order 01-02, with organizational charts attached to the Order. https://www.chicago.gov/content/dam/city/depts/cpb/SuperintendentSearch/CPDOrganization.pdf

In this case, Plaintiff alleges that over the span of several years, Defendant's police department engaged in a pattern of discrimination and retaliation against his wife, Nanlawala, which included discrimination and retaliation for: (1) requesting accommodations while pregnant; (2) requesting accommodations while nursing; (3) applying for positions that would advance her career; and (4) attempting to transfer out of the district after experiencing the discrimination and harassment. While applying for one assignment, Nanlawala was denied the assignment after one of her harassers, who was a decisionmaker, communicated to others that he found photographs of her on Facebook wearing the Muslim headscarf (*hijab*) and attending a rally in support of Palestinians. Dkt. 14-1, Defense Exhibit 1. The harasser threatened to discipline her for being "anti-Semitic" – a threat he ultimately did not carry out. Dkt. 14-1, Defense Exhibit 1. As Defendant admits, Plaintiff, not his wife, is Palestinian. Plaintiff's wife's history of protected activity spanned the course of five years, before she eventually went on stress medical leave. Dkt. 14-1, Defense Exhibit 1. Plaintiff was required to identify his wife and her employment to CPD when he applied for the position. Dkt. 7, § 9. Having not heard a response as to his application, Plaintiff communicated to Headquarters about his application but received no clear answer. *Id*. at ¶ 12. Three years after applying, a person from the Investigative Unit contacted Shalabi about his application. *Id*. at ¶ 13. That person recommended Plaintiff withdraw his application. *Id*. Plaintiff attributes the abeyance and denial of his application to retaliation for his wife's protected activity, and his identity as a Palestinian Arab. *Id*. at 38-42.

Defendant was aware of Nanlawala's requests for accommodations, applications for other assignments, attempt to transfer, etc., and not only failed to correct the treatment but reinforced it by allowing the conduct to continue until she took stress medical leave. Defendant's Human Resources division oversaw both Plaintiff's application, and his wife's requests for

accommodations and leave. During this time, Defendant failed to act on Shalabi's application for employment, while it acted on the applications of other similarly situated candidates.

Plaintiff alleges Defendant's police department engaged in discrimination and retaliation against him when it failed to hire him. The decisions over his hire were made by the police department's Human Resources division. The Human Resources division received its delegated its authority from the Chief of the Bureau of Organizational Development, who received its delegated authority from the First Deputy Superintendent, who gets their authority from the Superintendent. Chi. Police Dept., General Order No. 01-2, (May 10, 2018). Accordingly, under to *Kujawski* and pursuant to CPD's General Order G01-02, Plaintiff can show the delegation of authority sufficient to establish that the decisionmakers in his case acted with delegated final policymaking authority. Accordingly, Defendant's motion should be denied.

## II. Plaintiff States A Proper Claim for Retaliation Under Title VII (Count IV).

Plaintiff states a proper claim for retaliation under Title VII because third party reprisals violate Title VII and there was ongoing retaliation between engagement in the protected activities and the adverse action.

### a. Third party reprisals violate Title VII

The City argues that Shalabi failed to state a claim for retaliation because Shalabi's wife, rather than Shalabi himself, engaged in a protected activity and that third party retaliation claims are not cognizable under Title VII. Dkt. 14, p. 5-6. The City misstates the law.

In taking the facts alleged by Shalabi as true and drawing all reasonable inferences in his favor, CPD violated Title VII's antiretaliation provision set forth in 42 U.S.C. § 2000e-3(a) when it hired less qualified applicants over Shalabi. In *Burlington N. & S.F.R. Co. v. White*, the Supreme Court held that Title VII's antiretaliation provision prohibits any employer action that

"'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Thompson v. N. Am. Stainless, L.P.*, 562 U.S. 170, 174 (2011) (quoting *Burlington N. & S.F.R. Co. v. White*, 548 U.S. 53, 68 (2006)). *Thompson* involved a plaintiff who, with his fiancé, worked for the same company. *Id.* at 172. After Thompson's fiancé filed an EEOC complaint against their employer, the employer fired Thompson. *Id.* Thompson filed suit alleging that his termination was in retaliation for his fiancé's engagement in a protected activity. *Id.* After citing *Burlington N. & S.F.R. Co.*, the Court held, "We think it obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiancé would be fired." *Id.* Similarly, here, it is obvious that a reasonable worker might be dissuaded from asking for reasonable accommodations while pregnant and when wanting to pump breast milk had she known that her husband's application to her employer during the time of these requests would be held in limbo for six years.

Moreover, *Thompson* "stands for the proposition that a person aggrieved by retaliation has standing to sue for it even if that person did not engage in the protected activity but someone else did." *Scheidler v. Indiana*, 914 F.3d 535, 543 (7th Cir. 2019). The Supreme Court in *Thompson* explicitly rejected the notion that "third party reprisals do not violate Title VII." *Thompson*, 562 U.S. at 174. The Court held that Title VII incorporates the zone of interests test, "enabling suit by *any plaintiff* with an interest 'arguably [sought] to be protected by the statute....'" *Thompson*, 562 U.S. at 178 (citation omitted) (emphasis added). The Supreme Court held that Thompson fell within the zone of interests protected by Title VII because he was an employee of the same place as his fiancé, "and the purpose of Title VII is to protect employees from their employers' unlawful actions." *Id.* The Court pointed out, "Hurting him was the unlawful act by which the employer punished her."

The case at bar is analogous to *Thompson*. Here, CPD was where Shalabi's wife worked as a police officer and where Shalabi applied to work. Dkt. 7, §§ 6, 15. Shalabi alleged in his retaliation claim that when applying, he disclosed to CPD that his wife was a police officer. Dkt. 7, ¶ 39. Shalabi also alleged that his wife engaged in protected activity and complained about subsequent retaliation during the time his application was pending, and that Defendant retaliated against him when it selected other less qualified candidates over him. Dkt. 7, §§ 40, 42. Hurting Shalabi was the unlawful act by which CPD punished his wife. As such, the City's argument fails because Shalabi states a proper claim for retaliation under Title VII with enough facts to state a plausible claim. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### b. The temporal proximity between the protected activity and the adverse action overlapped.

The City contends that a temporal gap exceeding four years between the start of Plaintiff's wife's protected activity in April 2015 and Plaintiff's allegation that the City recommend he withdraw his application in July 2019 is too attenuated to support a claim of retaliation. Dkt. 14, p. 6. Defendant mischaracterizes the facts.

Plaintiff specifically states that prior to and during the time of his application, his wife, Nanlawala, engaged in protected activity. Dkt. 7, §§ 6, 16. At the same time that Plaintiff's application was under review within the CPD Investigative Unit and subsequently pending, Nanlawala experienced ongoing harassment. *Id.* at 10, 17-18. As such, the causal connection between the protected activity and CPD's adverse action of holding Plaintiff's application in limbo for years, and selecting less qualified candidates for police officer positions, overlap. *Id.* at 21, 26. See *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 829 (7th Cir. 2014) (holding plaintiff adequately alleged causal connection where the complaint "described an ongoing campaign of

retaliation and her claims must be viewed through that lens.").  Accordingly, Shalabi has
sufficiently pled his retaliation claim.

III.    **Plaintiff Successfully Preserved His Claims.**

The City contends that Shalabi did not exhaust his administrative remedies as to his
"Title VII retaliation and race discrimination claims."  Dkt. 14, p. 7.  Shalabi, however, provided
enough specificity in his EEOC charge for Title VII retaliation so as to satisfy the preservation of
the claim.  Shalabi is not required to exhaust administrative remedies for his § 1983 race
discrimination claim.

a.    *Plaintiff's Title VII retaliation claim (Count IV) is properly preserved*

Among the several prerequisites to the successful preservation of a claim under Title VII,
the plaintiff must bring claims in a lawsuit that were included in the EEOC charge.  *Teal v.
Potter*, 559 F.3d 687, 691 (7th Cir. 2009).  "The purpose of this requirement is twofold: to
promote resolution of the dispute by settlement or conciliation and to ensure that the sued
employers receive adequate notice of the charges against them."  *Id*.

"Some specificity in the charge is necessary 'to allow the agency to perform its statutory
duty.'"  *Rush v. McDonalds Corp*., 966 F2d 1104, 1111 (7th Cir. 1992).  Here, Shalabi submitted
online an EEOC Inquiry Information sheet on August 12, 2020.  The Inquiry Information sheet
delineates with specificity the nature of the third-party retaliation through Shalabi's wife.  After a
phone interview between the EEOC investigator and Shalabi on October 13, 2020 (with counsel
present on the call), the investigator drafted the EEOC charge.  The charge selects discrimination
based on retaliation and this is reiterated in the particulars section.  Dkt. 14-1, Defense Exhibit 2.
Shalabi then reviewed and digitally signed the charge on October 14, 2020.  *Id*.  Both documents
were uploaded to the EEOC portal.  Not only was the EEOC investigator aware of the basis for

Shalabi's retaliation claim, but the City would also be aware of it, because the City has access to these materials through the EEOC's online portal.  The EEOC charge and the Inquiry Information sheet, therefore, provide enough specificity to adequately satisfy the purpose of the preservation requirement.  See *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d. 497, 502 (7th Cir. 1994) ("The court can consider an amendment to the original charge within the meaning of 29 C.F.R. Sec. 1601.12(b) which "allows a charge to be amended 'to clarify and amplify allegations made therein.'").[2]

The City's concern that, "Nothing in Plaintiff's EEOC charge would allow the EEOC to perform its statutory duty of investigating alleged retaliation against Plaintiff for his wife's pregnancy," is unwarranted (and factually incorrect because the pregnancy is not the only retaliation she experienced, see *supra* Argument II.a.).  Dkt. 14, p. 7-8.

Accordingly, Shalabi's Title VII retaliation claim has been properly preserved to survive dismissal.

      **b.  *Exhaustion of administrative remedies is not incumbent upon Plaintiff's § 1983 race discrimination claim (Count I)***

Shalabi's race discrimination allegation is raised only through his § 1983 claim as CPD's violation of Shalabi's Constitutional right to be free of such discrimination.  Dkt. 7, § 26. Section 1983 plaintiffs need not exhaust state-law remedies before asserting their federal rights. *Patsy v. Board of Regents of State of Florida*, 457 U.S. 496, 500-01 (1982) ("...this Court has stated categorically that exhaustion is not a prerequisite to an action under § 1983....); see also *Bradley v. Vill. of Univ. Park*, 929 F.3d 875, 886 (7th Cir. 2019) (citing to *Patsy v. Board of Regents of State of Florida*, holding, "We see no reason to avoid Supreme Court precedent....").

---

[2] Plaintiff can provide the EEOC Inquiry Information Sheet to the Court.  Plaintiff has refrained from doing so to avoid turning the motion into a motion for summary judgment.  See *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014).

Tangentially, Plaintiff also brings a Title VII national origin claim under § 1983 for CPD's violation of Shalabi's statutorily protected rights, for which he did exhaust his administrative remedies. Accordingly, since Shalabi alleged no Title VII race discrimination claim, the City's conclusion that Shalabi "should be barred from bringing this Title VII race discrimination claim," for failure to exhaust administrative remedies is inapposite and should be denied. Dkt. 14, p. 8.

WHEREFORE, Plaintiff requests that this court deny Defendant's Partial Motion To Dismiss Counts I And IV Of Plaintiff's First Amended Complaint.

Respectfully submitted,

Dated: March 4, 2022

/s/ *Janaan Hashim*
Janaan Hashim

Janaan Hashim, Esq.
Amal Law Group, LLC
161 N. Clark Street, Suite 1600
Chicago, IL 60601
312-882-4122
jhashim@amallaw.com
Atty. Number 6288221

Christina Abraham, Esq.
Abraham Law and Consulting, LLC
161 N. Clark Street, Suite 1600
Chicago, IL 60601
(312) 588-7150
Christina.w.abraham@gmail.com

*Counsels for plaintiff*

11

**Certificate of Service**

The undersigned attorney hereby certifies that she caused a copy of **Plaintiff's Response In Opposition To Defendant's Partial Motion To Dismiss Counts I And IV Of Plaintiff's First Amended Complaint** to be served upon the parties assigned for service via electronic mail to the below email addresses on March 4, 2022.

John M. Catalano, Jr.
Assistant Corporation Counsel
City of Chicago, Dept. of Law
Employment Litigation Division
2 North LaSalle Street, Suite 640
Chicago, IL 60602
John.Catalano2@cityofchicago.org

Scott Crouch
Assistant Corporation Counsel
City of Chicago, Dept. of Law
Employment Litigation Division
2 North LaSalle Street, Suite 640
Chicago, IL 60602
Scott.Crouch@cityofchicago.org

Donna Pappas
Assistant Corporation Counsel
City of Chicago, Dept. of Law
Employment Litigation Division
2 North LaSalle Street, Suite 640
Chicago, IL 60602
donna.pappas@cityofchicago.org

/s/ *Janaan Hashim*

Janaan Hashim
Attorney for the Plaintiff

Attorney No. 6288221
Janaan Hashim, Esq.
Amal Law Group, LLC
161 N. Clark Street, Suite 1600
Chicago, IL 60601
312-882-4122
jhashim@amallaw.com

Dated: March 4, 2022