UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HANY SHALABI,<br><br>  Plaintiff,<br><br> v.<br><br>CITY OF CHICAGO,<br><br>  Defendant. | No. 21 CV 5623<br><br>Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

  Hany Shalabi applied to become a police officer with the Chicago Police Department in 2016. About a year before he applied, Shalabi's wife, Nilofer Nanlawala, joined the department. During her employment, she sought accommodations for her pregnancy and complained about subsequent retaliation. For more than three years after Shalabi applied, he heard nothing. Then, in mid-2019, Shalabi received a call from someone at the department recommending that he withdraw his application. Shalabi refused, and he has yet to receive a decision on his application. Shalabi, an Arab Muslim of Palestinian descent, alleges that the city refused to hire him for discriminatory reasons, and as retaliation for Nanlawala seeking pregnancy accommodations. He brings claims against the city under the Equal Protection Clause and 42 U.S.C. § 1983, and under Title VII of the Civil Rights Act of 1964 for national-origin discrimination, religious discrimination, and retaliation. The city moves to dismiss the § 1983 and retaliation claims under

Rule 12(b)(6). For the reasons below, the motion is granted with respect to the former and denied as to the latter.

I.   **Legal Standards**

A complaint must contain a short and plain statement that suggests a plausible right to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). I accept all factual allegations as true and draw all reasonable inferences in Shalabi's favor, but I disregard legal conclusions. *See Iqbal*, 556 U.S. at 678.

II.   **Facts**

In April 2016, Hany Shalabi applied to become a police officer with the Chicago Police Department. [7] ¶ 6.[1] Shalabi is an Arab man of Palestinian origin, and he is a Muslim. *Id*. ¶ 5. Before applying to the department, Shalabi worked as a correctional officer for the Illinois Department of Corrections, and later, for its intelligence unit. *Id*. ¶¶ 7–8. Shalabi complied with the CPD's procedures and requirements for becoming a police officer; he provided background-check information, disclosed that his wife, Nilofer Nanlawala, was a CPD police officer, and he successfully passed mandatory medical, written, physical, and polygraph tests. *Id*.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. Facts are taken from the amended complaint, [7].

¶¶ 9–10.[2] Nanlawala became an officer in 2015. *Id*. ¶ 15. During her employment, she sought accommodations for her pregnancy, and she complained about subsequent retaliation. *Id*. ¶¶ 16, 40. Defendant failed to immediately provide accommodations, and after returning from maternity leave, Nanlawala experienced harassment. *Id*. ¶¶ 16–17.

The department's Investigative Unit received Shalabi's application after he passed his initial tests. *Id*. ¶ 10. From April 2016 through July 2019, the department had not informed Shalabi of a hiring decision; Shalabi repeatedly followed up with the department about his application but got nowhere (someone at the department even told him that his application had been lost). *Id*. ¶¶ 11–12. In July 2019, someone within the Investigative Unit called Shalabi. *Id*. ¶ 13. The individual told Shalabi that if the department continued to investigate and decided to decline his application, it would go in his record and could interfere with future job applications. *Id*. Shalabi

---

[2] Nanlawala has filed her own suit against the city, *see Nanlawala v. City of Chicago*, 21-cv-5624 (N.D. Ill.), and the city has attached her complaint to its response brief. [14-1] at 2–13. Both parties cite facts from Nanlawala's complaint to add color to their respective narratives, and the city asks that I take judicial notice of Nanlawala's complaint because it is a public record. *See* [14] at 2 n.3. There's no harm in acknowledging the fact that Nanlawala has filed her own complaint. But taking judicial notice of any facts asserted within Nanlawala's complaint would be erroneous. Nanlawala's allegations are, by definition, not beyond reasonable dispute; removing those facts from dispute here by taking judicial notice would be improper under both Federal Rule of Evidence 201(b) and collateral estoppel principles. *See General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082–83 (7th Cir. 1997) ("If a court takes judicial notice of a fact whose application is in dispute, the court removes these weapons from the parties and raises doubt as to whether the parties received a fair hearing."). I assess Shalabi's complaint on its own, accepting his allegations as true. Nanlawala's complaint can neither add to, nor detract from, the sufficiency of Shalabi's complaint at this stage.

refused to withdraw, and he has not heard from the department about his application since. *Id.* ¶¶ 13–14.

Shalabi alleges that similarly situated 2016 applicants who were not Arab, Palestinian, or Muslim, received a determination quicker and were hired by the department, despite being less qualified than Shalabi. *Id.* ¶¶ 19–21, 26. He also says defendant's refusal to hire him was retaliation for Nanlawala's participation in protected activity—namely, requesting accommodations for her pregnancy and complaining about retaliation. *Id.* ¶¶ 39–42. Shalabi filed a charge with the Equal Employment Opportunity Commission on October 14, 2020, and received a notice of right to sue on July 23, 2021. *Id.* ¶ 1. He brings claims under § 1983 for race discrimination (Count I), and under Title VII for national-origin discrimination (Count II), religious discrimination (Count III), and retaliation (Count IV). Defendant moves to dismiss Counts I & IV.

### III. Analysis

#### A. *Monell*

The Equal Protection Clause of the Fourteenth Amendment "guard[s] against state and local government discrimination on the basis of race, national origin, sex, and other class-based distinctions." *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 588 (7th Cir. 2021) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012)). Section 1983 authorizes suits against municipalities for constitutional violations committed by employees, if said violations flow from local policy. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–92 (1978);

4

*Gaetjens v. City of Loves Park*, 4 F.4th 487, 495 (7th Cir. 2021). "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Rather, a plaintiff "who wants to impose liability on a municipality for a constitutional tort must show that the tort was committed (that is, authorized or directed) at the policymaking level of government." *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) (quoting *Vodak v. City of Chicago*, 639 F.3d 738, 747 (7th Cir. 2011)). A § 1983 plaintiff may show that "the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Fields v. City of Chicago*, 981 F.3d 534, 562 (7th Cir. 2020) (quoting *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010)). As such, "a *Monell* claim can prevail only if a policy-making official knows about them and fails to correct them." *Dixon v. Cnty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016).

Here, Shalabi says that the city did not hire him because of his race, and instead, it hired less qualified, non-Arab applicants. Shalabi does not argue—and the complaint does not allege—that any official policy or widespread custom or practice caused the discrimination. Instead, the complaint asserts that the discrimination was "caused by the deliberate acts of [defendant's] decision-makers." [7] ¶ 27. Shalabi contends that the department's Human Resources division oversaw his application and had final policy-making authority because the Superintendent delegated hiring authority to it.

5

Whether a local official has final policy-making authority is a question of state and local law. *See Burger v. Cnty. of Macon*, 942 F.3d 372, 375 (7th Cir. 2019). It is well-settled, however, that "mere unreviewed discretion to make hiring and firing decisions does not amount to policymaking authority. There must be a delegation of authority to set policy for hiring and firing, not a delegation of only the final authority to hire and fire." *Kujawski v. Bd. of Comm'rs of Bartholomew Cnty., Ind.*, 183 F.3d 734, 739 (7th Cir. 1999); *see also Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 675 (7th Cir. 2009) ("The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–82 (1986))).

Shalabi fails to state a claim under *Monell*. The complaint does not plausibly suggest that the Human Resources division—or any official within that division—had final policy-making authority with respect to hiring and firing. In fact, the complaint does not mention the Human Resources division; it alleges that the department's "Investigative Unit" handled Shalabi's application, and that an individual from that unit called Shalabi to recommend that he withdraw his application. Ostensibly, Shalabi is referring to the "Investigations Section" of the Human Resources division of the Bureau of Organizational Development, based on his citation to the department's General Order establishing its organization and command structure. [16] at 4 n.1. The Order provides that the Investigations Section "ensures that all aspects related to the pre-employment-hiring process for sworn

6

members are completed … [and] performs comprehensive background investigations, ensures that applicants meet all hiring standards, and opens and maintains preemployment personnel files." Chicago Police Department, General Order G01-02-06 (Aug. 31, 2018). It does not, however, suggest that anyone in the Human Resources division has final policy-making authority. And without facts plausibly tying the department's decision not to hire Shalabi to a discriminatory policy, his *Monell* claim must be dismissed.

Count I is dismissed without prejudice. *See White v. Illinois State Police*, 15 F.4th 801, 808 (7th Cir. 2021) (on first motion to dismiss, dismissal without prejudice is the norm).[3]

### B. Title VII Retaliation

Title VII's anti-retaliation provision bars employers from discriminating against employees or applicants because they've "opposed any practice made unlawful" under Title VII. 42 U.S.C. § 2000e-3(a). "To plead a Title VII retaliation claim, a plaintiff must (though [he] need not use the specific terms) allege that [he] engaged in statutorily protected activity and was subjected to adverse employment action as a result of that activity." *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 833 (7th Cir. 2015) (citing *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013)). But "a person aggrieved by retaliation [under Title VII] has standing to sue for it even if that person did not engage in the protected

---

[3] The complaint references Title VII within Count I, *see* [7] ¶ 26, but plaintiff clarified that Count I is a § 1983 claim only. [16] at 10–11.

activity but someone else did." *Scheidler v. Indiana*, 914 F.3d 535, 543 (7th Cir. 2019) (citing *Thompson v. North American Stainless, LP*, 562 U.S. 170, 173–79 (2011)). To qualify as protected activity under Title VII, any complaint of discrimination must be based on a protected characteristic. *See Miller v. Chicago Transit Auth.*, 20 F.4th 1148, 1155 (7th Cir. 2021). Moreover, in the retaliation context, "'adverse action' encompasses a greater swath of actions than with discrimination claims. An employer's action is materially adverse if it would dissuade a reasonable employee from engaging in the protected activity." *Williams v. Bd. of Educ. of City of Chicago*, 982 F.3d 495, 509 (7th Cir. 2020) (citation omitted).

The amended complaint states a claim for unlawful retaliation. Shalabi alleges (1) that Nanlawala engaged in protected activity by seeking accommodations for her pregnancy and complaining about subsequent retaliation, and (2) that the city did not hire him based on Nanlawala's protected activity. [7] ¶¶ 16, 40, 42. That's enough to get the complaint over the plausibility line on retaliation. At this stage of the case, the city does not dispute that Nanlawala engaged in protected activity within the scope of Title VII's prohibition against retaliation. And the city does not argue that withholding a hiring decision would not dissuade a worker from engaging in protected activity.

The city makes two other arguments, and they both fall short. First, the city says Shalabi can't bring a retaliation claim because only his wife engaged in protected activity, and he did not. The city cites *Thompson v. North American Stainless, LP*, 562 U.S. 170 (2011), for support, but *Thompson* squarely rejected this argument.

8

When an action taken against an employee's significant other is the "employer's intended means of harming" the employee and "the unlawful act by which the employer punished" the employee for protected activity, then the injured spouse is "well within the zone of interests sought to be protected by Title VII [and] is a person aggrieved with standing to sue." *Id*. at 178. The city also leans on *Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634 (7th Cir. 2015), but that case is inapposite. There, a student failed to state a claim for retaliation under two other civil rights laws (the Rehabilitation Act, 29 U.S.C. §§ 701–796l, and the Americans with Disabilities Act, 42 U.S.C. §§ 12201–12213), because his allegations focused only on actions the defendant took against his parents after they attempted to assert their own statutory rights concerning his education. *Id*. at 641. The student did not state a claim under those statutes because he failed to allege that the district had "retaliated against him based on any protected action that he took." *Id*. But here, Shalabi has alleged that the department decided not to hire him in retaliation for Nanlawala's protected activity. That's his own injury, and under *Thompson*, he has stated his own retaliation claim under Title VII.

  Second, the city contends that Shalabi has failed to plead a causal connection between Nanlawala's protected activity and the department's failure to hire him. More specifically, the city says that there's a four-year time gap between Nanlawala's protected activity and the city's recommendation that Shalabi withdraw his application, and that gap is too great to support a plausible claim for retaliation.

9

But the city's timeline is off, and Shalabi has alleged a plausible causal connection. True, "a retaliation claim can indeed be so bare-bones that a lengthy time period between the protected activity and the alleged retaliation will make any causal connection between the two implausible." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014). An unexplained three-year gap between an employee's report against another employee and his termination, for example, may make a retaliation claim based on the report implausible. *See Carmody v. Board of Trustees of Univ. of Illinois*, 747 F.3d 470, 480 (7th Cir. 2014). But "[t]he mere passage of time is not legally conclusive proof against retaliation." *Malin v. Hospira, Inc.*, 762 F.3d 552, 559 (7th Cir. 2014) (citation omitted). Moreover, at the complaint stage, "no bright-line timing rule can be used to decide whether a retaliation claim is plausible." *Carlson*, 758 F.3d at 829.

And here, drawing all inferences in Shalabi's favor, it is plausible that Nanlawala sought accommodations for her pregnancy close in time to—or even after—the submission of Shalabi's application. The complaint alleges that Nanlawala joined the department "the year prior to [Shalabi] submitting his application" and that "[d]uring her employment, [Nanlawala] engaged in protected activity after she became pregnant and sought accommodation." [7] at ¶¶ 15–16. The complaint does not allege the exact date Nanlawala sought accommodations, but it's reasonable to infer close temporal proximity to Shalabi's application date. What's more, it is reasonable to infer that the retaliatory refusal to hire Shalabi began as soon as he submitted his completed application in April 2016 and not, as the city says, when

10

someone recommended that he withdraw in 2019. The complaint tells a plausible story that the city's continued refusal to hire Shalabi from 2016 onward represented ongoing retaliation. *See Carlson*, 758 F.3d at 829. Accepting the complaint's allegations as true, Shalabi has stated a claim for retaliation.

### C. Exhaustion

Lastly, the city argues that the retaliation claim should be dismissed because Shalabi failed to exhaust administrative remedies.[4] As a precondition to filing a Title VII lawsuit, a plaintiff must first file a charge with the EEOC and receive a right to sue letter. *See Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) (citing *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992)). "Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts." *Fort Bend Cnty., Texas v. Davis*, 139 S. Ct. 1843, 1851 (2019). After receiving a right to sue letter, a plaintiff "may bring only those claims that were included in [his] EEOC charge, or that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Chaidez*, 937 F.3d at 1004 (citation and quotation marks omitted). To be like or reasonably related, the charge and complaint "must, at minimum, describe the *same conduct* and implicate the *same individuals*." *Chaidez*, 937 F.3d at 1004 (quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir.

---

[4] As noted above, Shalabi clarified that Count I is only a § 1983 claim, and unlike Title VII, section 1983 does not require administrative exhaustion before filing suit. *See, e.g.*, *Pakdel v. City & Cnty. of San Francisco, California*, 141 S. Ct. 2226, 2230–31 (2021); *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2167 (2019).

1994)). The exhaustion requirement serves two purposes: (1) to allow the EEOC and the employer an opportunity to settle the matter, and (2) to ensure that the employer has adequate notice of the challenged conduct. *See Chaidez*, 937 F.3d at 1004; *Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009).

At the same time, in Title VII actions "[a] plaintiff's failure to exhaust administrative remedies is an affirmative defense, which is the defendant's burden to prove." *Salas v. Wisconsin Dep't of Corr.*, 493 F.3d 913, 922 (7th Cir. 2007). At the pleading stage, a plaintiff "need not anticipate and refute affirmative defenses." *See Bourke v. United States*, 25 F.4th 486, 490 (7th Cir. 2022); *see also Stuart v. Loc. 727, Int'l Bhd. of Teamsters*, 771 F.3d 1014, 1018 (7th Cir. 2014) ("A plaintiff is not required to negate an affirmative defense in his or her complaint … for the painfully obvious reason that the defendant will not have pleaded any affirmative defenses until it files its answer or a motion to dismiss." (citations omitted)). An exception applies when "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). But affirmative defenses often "turn on facts not before the court at the pleading stage," so "dismissal is appropriate *only* when the factual allegations in the complaint unambiguously establish all the elements of the defense." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) (citations and quotation marks omitted).

Shalabi hasn't pleaded himself out of court on the city's exhaustion defense. The amended complaint alleges that Shalabi filed a charge with the EEOC and

received a right to sue letter. [7] ¶ 1. Shalabi did not include his EEOC charge with his complaint, but the city attached his charge to its brief. [14-1] at 15.[5] The charge alleged continuing discrimination from April 2016 to October 2020 and checked the boxes for discrimination based on religion, national origin, and retaliation. *Id.* The charge states:

> In or around April 2016, I applied for a position with [the CPD] as a Police Officer. I have not been selected. I believe that I have been discriminated against because of my national origin, Palestinian, my religion, Muslim, and in retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended.

*Id.* The city argues that Shalabi's charge did not offer the specificity needed to allow the EEOC to perform its statutory duty of investigating retaliation based on Nanlawala's request for pregnancy accommodations. *See* [14] at 7–8.

In response, Shalabi says that, in addition to his charge selecting discrimination based on retaliation, he also submitted an online "EEOC Inquiry Information sheet" in August 2020, which "delineate[d] with specificity the nature of the third-party retaliation through Shalabi's wife." [16] at 9. Shalabi further says that both the EEOC and the city were aware of the details of his retaliation claim because the information sheet and the charge were accessible through the agency's online portal. *Id.* at 9–10.

Dismissing the retaliation claim at this stage—based on the limited factual assertions in the parties' briefs—would be premature. "[A]llegations outside the body

---

[5] Consideration of the charge is proper because it is central to the complaint and referred to within it. *See O'Brien v. Vill. of Lincolnshire*, 955 F.3d 616, 621 (7th Cir. 2020).

of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations." *Swearnigen–El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 865 (7th Cir. 2010) (quoting *Vela v. Village of Sauk Village*, 218 F.3d 661, 664 (7th Cir. 2000)). Here, there are some facts (from the parties' briefs) that suggest Shalabi intended for the EEOC to investigate the allegations in the information sheet, and that the sheet put the EEOC and the city on notice of the details of the retaliation charge. In some circumstances, courts have found that intake forms may constitute a "charge" for exhaustion purposes. *See Williams v. CSX Transp. Co.*, 643 F.3d 502, 509–10 (6th Cir. 2011) ("Charge Information Form" constitutes charge for purpose of exhausting administrative remedies); *see also Jordan v. Whelan Sec. of Illinois, Inc.*, 30 F.Supp.3d 746, 750–52 (N.D. Ill. 2014) (denying motion to dismiss where plaintiff argued EEOC charge left out critical information from intake questionnaire). In others, forms that precede a charge have been deemed insufficient to demonstrate exhaustion. *See Novitsky v. Am. Consulting Engineers, L.L.C.*, 196 F.3d 699, 702 (7th Cir. 1999) (summary judgment proper when claimant included only one incident to support accommodation claim on intake form but did not include that incident in signed charge that claimant reviewed with counsel); *Herrera v. Di Meo Bros., Inc.*, 529 F.Supp.3d 819, 828 (N.D. Ill. 2021) (dismissing complaint for failure to exhaust because specific EEOC Form on which plaintiff relied stated "in bolded, capital letters on each page 'THIS PRE-CHARGE INQUIRY IS NOT A CHARGE OF DISCRIMINATION'").

The bottom line is: at this stage and without more details on what Shalabi's inquiry information sheet said, it would be premature to dismiss the retaliation claim on exhaustion grounds. Whether Shalabi clearly intended for the EEOC to investigate the allegations in the information sheet is an issue that requires factual development.

## IV. Conclusion

Defendant's motion to dismiss, [13], is granted in part, denied in part. Count I is dismissed without prejudice. The motion is denied with respect to Count IV.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: May 25, 2022